UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID SCOTT VACHON,

     Plaintiff,

v.                       Case No.:  6:20-cv-1521-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Plaintiff David Scott Vachon filed a Complaint on August 21, 2020.  (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions.  (Doc. 22).  With leave of Court, (Doc. 23), Plaintiff also filed a reply brief, (Doc. 24).  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on August 11, 2017, alleging a disability onset date of June 10, 2017. (Tr. at 20).[1] Plaintiff's claim was denied initially on October 31, 2017, and upon reconsideration on January 26, 2018. (*Id.*). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and ALJ Sylvia H. Alonso held a hearing on May 3, 2019. (*Id.* at 51-83). ALJ Alonso issued an unfavorable decision on July 29, 2019. (*Id.* at 17-50). The Appeals Council subsequently denied Plaintiff's request for review on June 25, 2020. (*Id.* at 1-7). Plaintiff then filed his Complaint with this Court on August 21, 2020, (Doc. 1), and the parties consented

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017). The new regulations apply in Plaintiff's case because Plaintiff filed his claim after March 27, 2017.

to proceed before a United States Magistrate Judge for all purposes.  (Docs. 16, 18).

The matter is, therefore, ripe for the Court's review.

III.   **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022.  (Tr. at 22).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 10, 2017, the alleged onset date.  (*Id.*).  At step two, the ALJ determined that Plaintiff has the following severe impairments:  "Chronic obstructive pulmonary disease (COPD); plantar fasciitis of left foot; degenerative disc disease; arthropathy; inflammatory arthritis; fibromyalgia; avascular necrosis bilateral hips; bilateral knee disorder; depression; anxiety and attention deficit

hyperactivity disorder (ADHD) (20 [C.F.R. §] 404.1520(c))." (*Id.* at 23).  At step

three, the ALJ determined that Plaintiff did "not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed

impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§]

404.1520(d), 404.1525, and 404.1526)." (*Id.* at 24).

At step four, the ALJ found that Plaintiff has the residual functional capacity

("RFC"):

> to perform light work as defined in 20 [C.F.R. §]
> 404.1567(b) except the claimant can stand/walk 4 hours out
> of an 8-hour workday.  He can frequently climb ramps and
> stairs, occasionally climb ladders, ropes, and scaffolds.  The
> claimant can frequently balance, stoop, kneel, crouch, and
> crawl.  The claimant should avoid exposure to fumes and
> gases.  He can concentrate and persist to complete simple
> tasks in a routine work setting.

(*Id.* at 26-27).  The ALJ also determined that Plaintiff "is unable to perform any past

relevant work (20 [C.F.R. §] 404.1565)." (*Id.* at 41).

At step five, considering Plaintiff's age, education, work experience, and RFC,

the ALJ determined that "there are jobs that exist in significant numbers in the

national economy that the claimant can perform (20 [C.F.R. §§] 404.1569 and

404.1569(a))." (*Id.*).  Specifically, the ALJ, relying on Vocational Expert ("VE")

testimony, found that Plaintiff could perform the following jobs that exist in

significant numbers in the national economy:  Office Helper (DOT# 239.567-010);

Ticket Taker (DOT# 344.667-010); and Ticket Seller (DOT# 211.467-030).  (*Id.* at

42).  For these reasons, the ALJ held that Plaintiff "has not been under a disability,

as defined in the Social Security Act, since June 10, 2017, through the date of this decision (20 [C.F.R. §] 404.1520(g))." (*Id.*).

## IV.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## V.    Analysis

On appeal, Plaintiff raises one issue.  As stated by the parties, the issue is "[w]hether the ALJ properly weighed the medical opinions of record based on an adequate rationale and substantial evidence at each step of the evaluation process." (Doc. 22 at 26).

Despite stating it as one issue, Plaintiff essentially presents three sub-arguments—*i.e.*, that the ALJ erred in her assessment of (1) the opinions finding that Plaintiff needs a walker or cane, (2) Dr. Hansen's opinion that Plaintiff meets Listing 1.02(A) and 1.04(A), and (3) Dr. Bhujang's opinion.  (*See id.* at 26-38).  Defendant separately responds to each of Plaintiff's construed sub-arguments.  (*See id.* at 44-51). The Court will address each of Plaintiff's sub-arguments individually.  Before considering the parties' arguments, however, the Court first sets forth the legal standards applicable to the assessment of opinion evidence, which is at issue in all three construed sub-arguments.

The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed his claim on August 11, 2017, (Tr. at 20), the revised regulations apply, *see* 20 C.F.R. § 404.1520c.  The regulations require that an ALJ apply the same factors in considering opinions from all medical sources, rather than

6

afford specific evidentiary weight to certain sources' opinions.  20 C.F.R. §
404.1520c(a).

In contrast, under Eleventh Circuit precedent, the "treating source rule"
requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or
considerable weight unless 'good cause' is shown to the contrary." *Phillips v.
Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d
1436, 1440 (11th Cir. 1997)).

At present, a question remains as to whether the Social Security
Administration's 2017 revised regulations override the Eleventh Circuit's treating
source rule. *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL
3418815, at *6 (M.D. Fla. Aug. 5, 2021) ("Given the absence of any binding or
persuasive guidance from the Court of Appeals, the Court is not willing to go as far
as the Commissioner suggests and find that cases applying the 'good cause' standard
are no longer good law, particularly given that *Winschel* [*v. Comm'r of Soc. Sec.*, 631
F.3d 1176 (11th Cir. 2011)] remains binding Eleventh Circuit precedent."), *with
Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10,
2022) ("[The SSA's] new regulatory scheme no longer requires the ALJ to either
assign more weight to medical opinions from a claimant's treating source or explain
why good cause exists to disregard the treating source's opinion."), *Douglas v. Saul*,
No. 4:20-cv-00822-CLM, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021)
("[Based on the application of *Chevron* and *Brand X*,] the court will apply the 2017
regulations – not the treating physician rule – to the ALJ's evaluation of the opinion

evidence."), *and Stemple v. Kijakazi*, No. 1:20-cv-485, 2021 WL 4060411, at *6 (N.D. Ohio Sept. 7, 2021) (collecting cases nationwide in support of the same proposition).

While the Eleventh Circuit has not directly addressed the issue in a published opinion, it has considered the issue in a recent unpublished opinion, *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).[2]  In *Matos*, the Court found that the ALJ's assessment of a treating source's medical opinion was legally sufficient where the ALJ only considered the medical opinion's supportability and consistency "in accordance with the SSA's new regulatory scheme." *Id.*  The Court expressly stated the SSA's "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source *or explain why good cause exists to disregard the treating source's opinion*." *Id.* (emphasis added).

Here, Plaintiff appears to assume that the treating source rule no longer applies.  (*See* Doc. 22 at 26-27).  Given Plaintiff's apparent concession and the Eleventh Circuit's recent opinion in *Matos*, the Court finds that the ALJ here is not required to demonstrate good cause to find a treating source's medical opinion unpersuasive.  However, even if the Eleventh Circuit's good cause requirement still applies, the result remains the same under both standards.

---

[2]  Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as binding precedent.  Citation to unpublished opinions on or after January 1, 2007, is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

First, under the revised regulations, as to each medical source, the ALJ must consider:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source.  20 C.F.R. § 404.1520c(b)(1).  The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own

records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Second, assuming without finding that the treating source rule survived the amended regulations, the ALJ must show "good cause" to discredit the opinion of a treating physician.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "Good cause exists when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted) (citing *Phillips*, 357 F.3d at 1241).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440; *contra Matos*, 2022 WL 97144, at *3-5.

## I.     Whether the ALJ Erred in Her Assessments of the Opinions Finding that Plaintiff Needs a Walker or Cane.

Plaintiff first argues that the ALJ erred in her assessment of the opinion evidence showing Plaintiff's need for an assistive device.  (Doc. 22 at 27-28, 32-34).  Plaintiff contends that the ALJ failed to discuss the persuasiveness of two prescriptions for a walker written by treating physicians Dr. Barnes and Dr. Stein, which Plaintiff appears to assert constitute medical opinions.  (*See id.* at 27-28

10

(citations omitted)).  Plaintiff essentially argues this failure resulted in an RFC that is not supported by substantial evidence.  (*Id.* at 28).  Plaintiff next points to the opinion of the medical expert, Dr. Hansen, and argues that despite being consistent with the opinions of Dr. Barnes, Dr. Stein, and PA Stoklosa, the ALJ failed to address the opinion.  (*Id.* at 28, 32 (citing Tr. at 1103)).  As a result, Plaintiff maintains that "the ALJ fail[ed] to provide sufficient rationale to discount the opinion of Dr. Hansen."  (*Id.* at 32 (citing Tr. at 1103)).  Finally, Plaintiff argues that the ALJ erred in finding PA Stoklosa's opinion that Plaintiff needed to use a walker not persuasive.  (*See id.* at 32-34).  In support, Plaintiff contends that in finding the opinion to be inconsistent with certain medical evidence, the ALJ did not consider the record as a whole.  (*See id.* (citations omitted)).

In response, Defendant first argues that while Dr. Barnes and Dr. Stein prescribed a walker, neither prescription constitutes a medical opinion and that the ALJ was, therefore, not required to assess the persuasiveness of the prescriptions. (*See id.* at 44 (citations omitted)).

Second, Defendant contends that to the extent PA Stoklosa and Dr. Hansen recommended RFC limitations requiring Plaintiff to use a cane or walker, the ALJ properly found the opinions not persuasive.  (*See id.* (citing Tr. at 25, 38, 1081-84, 1102-07)).  As to PA Stoklosa's opinion, Defendant maintains that the ALJ properly found the opinion not persuasive because:  (1) the opinion is inconsistent with the medical record as a whole, including Dr. Sharieff's and Dr. Vara's assessments, (*id.* at 45 (citing Tr. at 38, 137-38, 681)); (2) Plaintiff's motor strength had been normal,

(*id.* (citing Tr. at 631, 738, 781, 819, 896, 919, 933, 1027, 1034, 1036, 1051, 1061));
and (3) the evidence showed that Plaintiff ambulated without difficulty and with no
assistive device, (*id.* (Tr. at 38, 680, 895, 986, 991, 978, 996, 1006, 1037, 1058, 1014,
1026)).  Defendant also argues that the ALJ's decision shows that she considered
evidence suggesting that Plaintiff needed an assistive device.  (*Id.* (citing Tr. at 31-
40)).  Defendant maintains that "the ALJ's detailed discussion of the medical
evidence throughout [her] decision was more than sufficient" and that substantial
evidence supports the ALJ's persuasiveness finding on PA Stoklosa's opinion.  (*Id.* at
45-46).  As to Dr. Hansen's opinion, Defendant contends that the ALJ properly
found that Dr. Hansen's opinion that Plaintiff needed a walker or a cane was not
persuasive because it "was inconsistent with objective medical evidence, including
Dr. Vara's examination findings, and unsupported by explanations or reference to
objective findings."  (*See id.* (citing Tr. at 25, 680, 1102-07)).

In his reply, Plaintiff essentially argues that the definition of a medical opinion
includes prescriptions for assistive devices and that courts have found that the ALJ
must assign a weight to opinions regarding the use of assistive devices.  (*See* Doc. 24
at 1-4 (citations omitted)).

As to Dr. Stein's and Dr. Barnes' prescriptions, the Court finds that they do
not constitute medical opinions.  *See* 20 C.F.R. § 404.1513(a)(2) (defining a medical
opinion as "a statement from a medical source about what you can still do despite
your impairment(s) and whether you have one or more impairment-related
limitations or restrictions" in the four specific abilities); 20 C.F.R. § 404.1513(a)(3)

(defining other medical evidence as "evidence from a medical source that is not objective medical evidence or a medical opinion, including . . . treatment prescribed with response").  Because prescriptions are not medical opinions, the ALJ was not required to discuss the persuasiveness of either prescription.  *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-cv-01617-JDG, 2021 WL 3410430, at *15 (N.D. Ohio Aug. 4, 2021) (finding that a prescription for a wheelchair was not a medical opinion and the ALJ was, therefore, under no obligation to evaluate its persuasiveness).

Moreover, even if the ALJ was required to discuss the persuasiveness of the prescriptions, the Court finds that the ALJ's consistency discussion would satisfy her obligation, despite being separate from the rest of the persuasiveness evaluations.  *See Cody v. Comm'r of Soc. Sec. Admin.*, No. 9:20-cv-02620-JD-MHC, 2021 WL 6012228, at *7 (D.S.C. Oct. 27, 2021), *report and recommendation adopted sub nom. Belinda C. v. Comm'r of Soc. Sec.*, 2021 WL 6011067 (D.S.C. Dec. 17, 2021) (finding that although the ALJ did not discuss a doctor's prescription for a walker in the same discussion of the persuasiveness evaluation of the prescribing doctor's opinion, a subsequent discussion of the consistency of the prescription satisfied the ALJ's obligations under the new regulation).  More specifically, when discussing the prescriptions, the ALJ noted that:

> While the medical evidence does show the claimant was prescribed a walker on November 30, 2017 and December 21, 2017 ([Tr. at 769-71, 949-50]), the treatment notes by Sherri Henderson, PA-C, dated April 20, 2018, indicate the

> claimant's gait was [non-]antalgic.[3]  He ambulated with
> no assistive devices ([Tr. at 978]).  In addition, treatment
> notes by Dr. Regina Morris Solis dated October 18, 2018,
> show the claimant was able to ambulate without difficulty
> ([Tr. at 1047]).  Furthermore, treatment notes by Elizabeth
> Stoklosa, PA, dated December 3, 2018, indicate the
> claimant sought follow-up treatment after his
> radiofrequency ablation in the lumbar spine, and he was
> doing fantastic.  He reported improved pain in the lower
> back although he still continued to have left foot pain
> despite the foot injection, right hip pain, and ankle pain
> ([Tr. at 1036]).  Moreover, treatment notes dated December
> 19, 2018, indicate the claimant's gait was normal, and he
> was ambulating with no assistive devices ([Tr. at 996]).

(Tr. at 34).  Later, the ALJ addressed the issue again, finding that:

> While the medical evidence does show the claimant has
> knee and hip impairments and has been prescribed a walker,
> treatment notes by Dr. Ismael Ortega dated February 9,
> 2018, indicate that the "[p]atient used a cane for added
> support during walk . . . pace was fast with a fairly steady
> gait.  No stops or pauses during ambulation ([Tr. at 921])."

(*Id.* at 35).  The ALJ then discussed again the evidence cited in the previous excerpt

to further support that the prescriptions were inconsistent with the evidence of

record.  (*See id.* (citing Tr. at 978, 996, 1047)).  Thus, the ALJ implicitly found the

prescriptions to be inconsistent with the medical evidence of record, providing ample

record citations in support.  (*See id.* at 34-35).

Upon review, the Court finds that substantial evidence supports the ALJ's

implicit consistency evaluation.  (*See id.* at 34-35, 921, 978, 996, 1036, 1047).

---

[3]  The ALJ appears to have unintentionally omitted the word "non-" in the sentence.
(Tr. at 34).  Because the record reveals that Sherri Henderson, PA-C found Plaintiff's
gait to be "non-antalgic," (*id.* at 978), which is consistent with the ALJ's reasoning,
the Undersigned finds this to be a typographical error.

Accordingly, the Court finds that, to the extent necessary, the ALJ's discussion fulfilled her requirement to consider the prescriptions.  *See Cody*, 2021 WL 6012228, at *7, *report and recommendation adopted sub nom. Belinda C. v. Comm'r of Soc. Sec.*, 2021 WL 6011067.  Moreover, even considering Dr. Stein's and Dr. Barnes' statuses as treating physicians, the ALJ clearly articulated good cause for discrediting the prescriptions – if indeed they constitute medical opinions – when the ALJ showed that the prescriptions were inconsistent with the other evidence of record.

As to PA Stoklosa's opinion, the Court finds that even if the ALJ erred in the assessment of persuasiveness of the opinion that Plaintiff needs a walker to balance, the error was harmless.  (*See* Tr. at 39).  While the ALJ did not explicitly address the opinion that Plaintiff needed a walker for balance, the ALJ addressed PA Stoklosa's opinion that Plaintiff could "stand/walk [for] 1.5 hours in an 8-hour work day [sic]." (*Id*. at 38; *see also id.* at 1081).  The ALJ then found the opinion as a whole not persuasive because it was inconsistent with the medical evidence of record, including evidence showing that Plaintiff's "motor strength has been normal, and . . . evidence indicating [that] the claimant used no assistive device and was able to ambulate without difficulty."  (*Id.* at 38 (citing Tr. at 978, 996, 1037)).  This finding strongly implies that the ALJ implicitly considered the opinion that Plaintiff needed a walker for balance.  (*See id.*).  Indeed, the evidence the ALJ cited facially contradicts PA Stoklosa's opinion.  (*See id.* (citing Tr. at 978, 996)).

Nevertheless, even if the ALJ did not consider the opinion – implicitly or explicitly – any error is harmless because the ALJ would have found the opinion

inconsistent with the evidence cited. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) for the proposition that "[w]hen . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand"); (*see also* Tr. at 38). In that regard, the evidence relied on to reject the opined standing limitations is much of the same evidence relied on to reject the prescriptions for a walker, discussed above. (*See id.* 34-35). Given that the ALJ relied on the same evidence to find that Plaintiff does not require a walker despite the prescriptions for one, the Court finds that had the ALJ explicitly considered PA Stoklosa's opinion on the issue, the ALJ would have likewise found it unpersuasive. (*See, e.g.*, *id.* at 978, 996).

Moreover, even considering PA Stoklosa's status as a treating source, the ALJ clearly articulated good cause for discrediting her opinion when the ALJ showed that the opinion was inconsistent with the other evidence of record.

As it relates to Dr. Hansen's opinion, the Court likewise finds that remand is not required. In assessing the persuasiveness of Dr. Hansen's opined RFC, the ALJ stated that "the only portion of [Dr. Hansen's] opinion that [the ALJ] f[ound] persuasive and consistent with the overall record was the notion that the claimant can lift up to 20 pounds and stand/walk 4 hours in an 8-hour day." (*Id.* at 25). The negative implication of the statement is not, as Plaintiff appears to assert, that the ALJ ignored the rest of the opinion, but that the ALJ considered it and found it unpersuasive. (*See id.*). In support of the persuasiveness finding, the ALJ provided

examples as to why the remainder of the opinion was internally unsupported and otherwise inconsistent with the objective medical evidence of record.  (*See id.*).

Pertinent to this analysis, the ALJ found the remaining portion of the opinion, including that Plaintiff needed a cane or walker, to be unpersuasive because Dr. Hansen "failed to reconcile the Consultative Examiner's findings in his report." (*Id.*).  The report of Dr. Vara, the consultative examiner, specifically found Plaintiff did not need an assistive device and that his "[m]otor strength [was] 5/5 [in] both upper and lower extremities."  (*Id.* at 680-81).  Such findings are facially inconsistent with Dr. Hansen's opinion that Plaintiff needed a cane or walker.  (*Compare id.*, *with id.* at 1103).  In light of this, the Court finds that the ALJ did not err in finding Dr. Hansen's opinion unpersuasive due to its "fail[ure] to reconcile" the opinion with Dr. Vara's report.  (*See id.* at 25; *see also id.* at 680-81).  Indeed, such a finding is implicitly an analysis of the consistency of the opinion.  *See* 20 C.F.R. § 404.1520c(c)(2).  Because Dr. Hansen's opinion was inconsistent with other evidence of record, the ALJ did not err in finding it unpersuasive.  *See Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (noting that the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding'") (citation omitted).

Furthermore, even assuming *arguendo* that Social Security Rule 96-9p applies[4]

in Plaintiff's case, Plaintiff's contention would still fail.  SSR 96-9p provides in

relevant part that:

> To find that a hand-held assistive device is medically
> required, there must be medical documentation establishing
> the need for a hand-held assistive device to aid in walking
> or standing, and describing the circumstances for which it is
> needed (i.e., whether all the time, periodically, or only in
> certain situations; distance and terrain; and any other
> relevant information).   The adjudicator must always
> consider the particular facts of a case.  For example, if a
> medically required hand-held assistive device is needed
> only for prolonged ambulation, walking on uneven terrain,
> or ascending or descending slopes, the unskilled sedentary
> occupational base will not ordinarily be significantly
> eroded.

SSR 96-9p, 1996 WL 374185, at *7 (1996).  Importantly, "a prescription or the lack

of a prescription for an assistive device is not necessarily dispositive of medical

necessity."  *Kendrick v. Comm'r of Soc. Sec.*, No. 5;17-cv-244-Oc-GKS-PRL, 2018 WL

4126528, at *3 (M.D. Fla. July 9, 2018), *report and recommendation adopted*, 2018 WL

4112832 (M.D. Fla. Aug. 29, 2018) (citing *Staples v. Astrue*, 329 F. App'x 189, 191

(10th Cir. 2009); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002)).  As a result,

"[i]f . . . 'the record contains information showing a claimant uses a cane, an ALJ

---

[4]  Neither party asserts that SSR 96-9p applies, presumably because it addresses the
use of hand-held devices when a plaintiff is limited to sedentary work.  *See* SR 96-9p,
1996 WL 374185, at *7 (1996).  However, because its applicability would favor
Plaintiff and because SSR 96-9p has been applied to situations in which a plaintiff is
limited to light work, *see Ortiz v. Saul*, No. 8:19-cv-199-T-CPT, 2020 WL 1527856, at
*4 n.6 (M.D. Fla. Mar. 31, 2020) (collecting cases), the Court briefly considers it
here.

should explicitly consider whether the claimant has a medical necessity for using such a device and affirmatively reject [it], if appropriate, so the reviewing [c]ourt can be sure whether he intended to recognize use of a cane.'" *Ortiz v. Saul*, No. 8:19-cv-199-T-CPT, 2020 WL 1527856, at *4 (M.D. Fla. Mar. 31, 2020) (second and third alteration in original) (quoting *Ebenroth v. Saul*, 2020 WL 583057, at *7 (S.D. Ga. Jan. 14, 2020)).

Although the ALJ did not explicitly use the phrase "medical necessity," it is clear that she considered the medical documentation establishing Plaintiff's need for an assistive device and expressly rejected it in the portions of the ALJ's decision addressed above.  Likewise, for the reasons addressed above, the Court finds that substantial evidence supports the ALJ's rejection of a limitation that Plaintiff use an assistive device.  Thus, even if the ALJ erred in failing to expressly find that the use of an assistive device is not medically necessary, the Court finds this error harmless. *See Denomme*, 518 F. App'x at 877 (citing *Diorio*, 721 F.2d at 728); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (noting that the Court has declined to remand "for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision").

Finally, to the extent Plaintiff cites other evidence of record that he contends supports a different conclusion, (Doc. 22 at 32-34), the Court finds that the evidence does not require remand.  Indeed, it is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the

Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178). Thus, the Court finds meritless Plaintiff's argument that the other records cited require remand.

In sum, the Court finds that substantial evidence supports the ALJ's consideration of any prescription for or medical opinion that Plaintiff requires an assistive device. Accordingly, the Court affirms on this issue.

## II.   Whether the ALJ Erred in Assessing the Persuasiveness of Dr. Hansen's Opinion.

Second, Plaintiff argues that the ALJ erred in her assessment of the persuasiveness of Dr. Hansen's, the state agency consultant, opinion that Plaintiff meets Listings 1.02(A) and 1.04(A). (*See* Doc. 22 at 28-32). Plaintiff highlights that the ALJ gave five reasons for finding the opinion not persuasive. (*Id.* at 29). As to the first proffered reason – that Dr. Hansen erroneously listed symptoms as impairments – Plaintiff contends that Dr. Hansen properly considered the impairments and the impairments' effects when opining that Plaintiff met the Listings. (*Id.* at 29-30 (citing Tr. at 1109-10; POMS DI 24508.010C)). As to the second reason – that Dr. Hansen's rationale is based on diagnoses and symptoms rather than objective evidence – Plaintiff highlights the objective evidence cited by

Dr. Hansen.  (*Id.* at 30 (citing Tr. at 960-61, 1108-09)).  As to the third reason – that

Dr. Hansen does not explain how the cervical MRI supports a Listing level –

Plaintiff addresses why the evidence meets Listing 1.04(A).  (*Id.* at 31 (citing Tr. at

24, 974-75)).  As to the fourth reason – that Dr. Hansen's opinion was inconsistent

with the earlier state agency consultant – Plaintiff points out that Dr. Hansen's

opinion was made after the record was fully developed.  (*Id.* (citing Tr. at 24)).  As to

the fifth and final reason – that Dr. Hansen's Medical Statement of Ability to do

Work-Related Activities "tends to negate his opinion that the claimant meets a

listing inasmuch as the statement would be superfluous" – Plaintiff maintains that

Dr. Hansen addresses this issue, making clear that he believes Plaintiff meets the

Listings but offering a further opinion to benefit the ALJ.  (*Id.* (quoting Tr. at 25 and

citing Tr. at 1110)).

In response, Defendant argues that "Plaintiff's argument that the ALJ erred in

evaluating Dr. Hansen's opinion[] that Plaintiff's impairment[s] met and equaled

Listings fails outright because the ALJ was not required to evaluate the

persuasiveness of these statements" under the pertinent regulations.  (*Id.* at 47-48

(citations omitted)).  Additionally, Defendant contends that Plaintiff "did not prove

that his impairments met or equaled Listings 1.02(A) or 1.04(A)."  (*Id.* at 46 (citing

Tr. at 24)).  In support, Defendant provides the requirements to meet the relevant

Listings and argues that Plaintiff fails to meet these requirements.  (*Id.* at 48-50).

In his reply, Plaintiff argues that Dr. Hansen's opinion is supported by his own

notes and consistent with others' opinions.  (*See* Doc. 24 at 4 (citing Tr. at 960, 974-

75, 766, 949, 1082, 1103, 1108-09)).  Additionally, to the extent Defendant argues that the ALJ did not need to address the issue of a Listing because whether Plaintiff meets a Listing is an issue reserved to the Commissioner, Plaintiff asks the Court to reject Defendant's argument as *post hoc* reasoning.  (*See id.* at 4-5).

As an initial matter, while Plaintiff characterizes Defendant's argument that the ALJ need not consider opinions on issues reserved to the Commissioner as a *post hoc* realization, the Court construes it as a harmless error analysis.  (*See* Doc. 24 at 4-5; Doc. 22 at 43-44).  The Court agrees with Defendant's position, as construed.

More particularly, even assuming *arguendo* that the ALJ erred in her assessment of Dr. Hansen's opinion, remand would not be warranted.  Rather, as Defendant correctly points out, the decision as to whether Plaintiff met a Listing was reserved to the Commissioner.  *See Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 542 (11th Cir. 2014) (noting that whether a claimant meets a Listing is a decision reserved to the Commissioner).  Under the pertinent regulations, such an opinion is "inherently neither valuable nor persuasive to the issue" of whether a claimant is disabled.  20 C.F.R. § 404.1520b(c).  The ALJ was, therefore, not required to consider Dr. Hansen's opinion.  *See id.*; *see also Hernandez v. Soc. Sec. Admin., Comm'r*, 761 F. App'x 901, 903-04 (11th Cir. 2019) (concluding that the ALJ was not required to consider an opinion on an issue reserved to the Commissioner).  Accordingly, even if the Court were to remand this case, on remand the ALJ could merely decline to address that portion of the opinion, noting instead that it was an issue reserved to the Commissioner, and reach the same conclusion.  *See* 20 C.F.R. § 404.1520b(c).

Because on remand the result would remain the same, the Court finds the ALJ's error, if any, harmless. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) for the proposition that "[w]hen . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand"); *c.f. Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (noting that the Court may decline to remand "for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision"). As a result, the Court finds that the ALJ's decision is due to be affirmed on this issue.

### III.   Whether the ALJ Erred in Her Assessment of the Persuasiveness of Dr. Bhujang's Opinion.

Finally, Plaintiff argues that the ALJ erred in finding Dr. Bhujang's opinion "not persuasive because it is not consistent with her treatment records, which are scant and showed normal/generally benign mental status exams." (*See id.* at 35-36 (quoting Tr. at 39)). In support, Plaintiff cites several findings made by Dr. Bhujang, which Plaintiff contends support the opined limitations. (*Id.* (citing Tr. at 876, 877, 881, 878, 879-80 1079, 1076, 1077)). Additionally, to the extent the ALJ found that the opinion was inconsistent with Plaintiff's ongoing job interviews, Plaintiff maintains that this is an insufficient reason as it shows only that Plaintiff is trying to work, not that he would succeed. (*Id.* at 36 (citing Tr. at 39)). Finally, Plaintiff

argues that the ALJ erred in relying on Plaintiff's daily activities to discredit the opinion, contending that (1) under Eleventh Circuit precedent, participation in everyday activities does not render someone not disabled and (2) the ALJ did not fully or properly consider Plaintiff's testimony on his daily activities. (*Id.* at 36-37 (citations omitted)).

In response, Defendant argues that the ALJ did not err. (*Id.* at 50). In support, Defendant maintains that the ALJ properly concluded that the objective findings made by Dr. Bhujang during the relevant time period do not support the limitations opined. (*See id.* at 50-51 (citing Tr. at 39, 878-79, 881, 971-73)). Additionally, Defendant contends that the ALJ did not err in finding the opinion inconsistent with other providers' treatment notes, (*id.* at 51 (citing Tr. at 738, 749, 78, 805, 878, 889, 892, 896, 913, 919, 933, 939, 979, 987, 991, 996, 1006, 1015, 1019, 1022, 1026, 1058)), as well as Plaintiff's daily activities and ongoing job interviews, (*see id.* (citing Tr. at 39)). In light of this, Defendant maintains that substantial evidence supports the ALJ's finding that Dr. Bhujang's opinion was not persuasive. (*Id.*).

In evaluating the persuasiveness of Dr. Bhujang's opinion, the ALJ specifically noted that the opinion was inconsistent with: (1) Dr. Bhujang's "treatment records, which were scant and showed normal/generally benign mental status exams;" (2) the fact that Plaintiff had interviewed for seven jobs; (3) Plaintiff's daily activities; and (4) the objective findings of other health providers. (*See* Tr. at 39). Moreover, the ALJ cited specific medical records to support her determination.

24

(*See id.* (citing Tr. at 669-82, 683-732, 896, 913, 919, 933, 979, 983, 987, 991, 996, 1006, 1010, 1011, 1015, 1019, 1022, 1026)).

In the Medical Opinion RE:  Ability to Do Work Related Activities (Mental), Dr. Bhujang opined that Plaintiff had a "[l]imited, but satisfactory ability" to:  (1) carry out very short and simple instructions; (2) make simple work-related decisions; (3) ask simple questions or request assistance; (4) interact appropriately with the general public; and (5) maintain socially appropriate behavior.  (*Id.* at 971-72). Additionally, Dr. Bhujang found that Plaintiff was "[s]eriously limited" in his ability to:  (1) remember work-like procedures; (2) understand and remember very short and simple instructions; (3) sustain an ordinary routine without special supervision; (4) work in coordination with or proximity to others without being unduly distracted (5) adhere to basic standards of neatness and cleanliness; and (6) travel in unfamiliar places.  (*Id.*).  Dr. Bhujang also opined that Plaintiff was "[u]nable to meet competitive standards" in regards to:  (1) maintaining attention for two-hour segments; (2) maintaining regular attendance and being punctual within customary; (3) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (4) responding appropriate to changes in a routine work setting; (5) being aware of normal hazards and taking appropriate precautions, (6) understanding, remembering and carrying out detailed instructions; and (7) setting realistic goals or making plans independently of others.  (*Id.* at 971-72). Finally, Dr. Bhujang determined that Plaintiff had "[n]o useful ability to function" in regards to:  (1) completing a normal workday and workweek without interruptions

from psychologically based symptoms; (2) performing at a consistent pace without an unreasonable number and length of rest periods; (3) accepting instructions and responding appropriately to criticism from supervisors; (4) dealing with normal work stress; (5) dealing with stress of semi-skilled and skilled work; and (6) using public transportation.  (*Id.*).  Dr. Bhujang then explained her opined limitations in more detail.  (*Id.* at 973).

In considering this opinion, the ALJ found first that the opinion was not supported by Dr. Bhujang's treatment records.[5]  (*Id.*).  Specifically, the ALJ highlighted that Dr. Bhujang's notes "showed normal/generally benign mental status exam" but cited no specific note.  (*Id.*).  Additionally, the ALJ found that Dr. Bhujang's notes "suggest[]" that Plaintiff's psychiatric issues were secondary to pain but again filed to cite a specific record.  (*Id.* at 39).

Between August 28, 2017, and July 18, 2018, Dr. Bhujang kept treatment notes, which included her objective findings during the mental status examination.

---

[5]  Although not argued by Plaintiff, the Court notes that the ALJ did not explicitly use the word "supportability" when assessing the persuasiveness of Dr. Bhujang's opinion.  Rather, the ALJ actually found the opinion to be "inconsistent with" Dr. Bhujang's own records.  (*See* Tr. at 39).  As noted above, however, supportability relates to the extent to which a medical source *has articulated support for the medical source's own opinion*, while consistency relates to the *relationship between a medical source's opinion and other evidence within the record*.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  Because the ALJ found that the opinion was inconsistent with Dr. Bhujang's objective findings, (*see* Tr. at 39), the ALJ properly assessed supportability.  Thus, to the extent the ALJ may have erred in failing to use the word "supportability," the Court finds the error harmless because the ALJ nonetheless assessed the factor.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

(*See id.* at 876-81).  Each note shows that Plaintiff's speech was clear, he had no suicidal/homicidal ideation, he was oriented "x3" and his memory, intellect, and insight/judgment was appropriate.  (*Id.*).  Additionally, all but the note dated March 8, 2018, found Plaintiff to be alert.  (*See id.*).  Given the limited number of treatment notes, coupled with the fact that each record shows that the mental examination was normal, it is clear to the Court what evidence the ALJ relied on in reaching the finding that Dr. Bhujang's opinion was not supported by her treatment notes.  (*See id.* at 39, 876-81).  Likewise, in light of the findings made during the mental status examinations, (*see id.* at 876-81), the Court finds that substantial evidence supports the ALJ's supportability assessment as it relates to those objective findings.

As to the ALJ's notation that the treatment notes "suggest[]" that Plaintiff's psychiatric issues were secondary to pain, (*see id.* at 39), however, the Court finds the ALJ erred in failing to cite specific evidence in support.  Indeed, upon review of the treatment notes, it is unclear what evidence the ALJ relied on to reach this finding.  Nevertheless, the Court finds this error to be harmless given that substantial evidence supports the other basis for finding the opinion unsupported by Dr. Bhujang's treatment notes.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

As to the ALJ's consistency analysis, the Court finds no error.  In that regard, the ALJ found that Dr. Bhujang's opinion was inconsistent with Plaintiff's daily activities and "with other health providers in the record that note benign/normal

psychiatric findings." (*Id.* at 39).  In support, the ALJ cites specific evidence. (*See id.*).

As to Plaintiff's daily activities, the ALJ noted, as examples, that Plaintiff lived alone and was independent in caring for himself.  (*Id.*).  Plaintiff argues that the ALJ erroneously disregarded that Plaintiff's niece assists with his grooming, Plaintiff lies down most of the day, Plaintiff prepares only simple microwave meals, and that Plaintiff's mom cooks and shops for him.  (*See* Doc. 22 at 37).  The Court finds this argument not persuasive given the ALJ's opinion as a whole, in which the ALJ explicitly considered this testimony.  (*See* Tr. at 27-29).  Indeed, by nature of having addressed the full testimony related to Plaintiff's daily activities prior in the decision, (*see id.*), the Court finds that the ALJ did not err in summarizing the testimony at this time, (*see id.* at 39).

Additionally, the Court finds that the ALJ did not err in finding the opinion to be inconsistent with other treatment providers' records.  (*See id.*).  The ALJ cited specific records that she found to be inconsistent with Dr. Bhujang's opinion, including:  (1) Dr. Vara's October 11, 2017 notes in which she found Plaintiff to be "fully conscious and well oriented in time and space" but with a depressive mood and affect, (*see id.* at 681); (2) the 2017 hospital records from Holmes Regional Medical Center, which note that Plaintiff was alert, oriented x3, and in no acute distress and that he had no suicidal thoughts or behaviors, (*see, e.g.*, *id.* at 687, 697, 699, 703, 709-10, 713); (3) the October 9, 2018, July 17, 2018, February 9, 2018, and January 16, 2018 treatment notes, which state that Plaintiff "[d]enie[d] thoughts of

suicide, anxiety, depression, thoughts of violence, frightening visions or sounds, and mental problems" and found that Plaintiff was in no acute stress and "alert and cooperative," had a "normal mood and affect[ and a] normal attention span and concentration," (*see id.* at 896, 912-13, 918-19, 932-33); and (4) the April 19, 2018, May 7, 2018, July 18, 2018, August 15, 2018, December 19, 2018, and February 12, 2018 treatment notes, in which Plaintiff is found to be "oriented to time, place, and person" and "active and alert" as well as to have a "normal mood and affect," (*id.* at 979, 983, 987, 991, 996, 1006, 1011, 1015, 1019, 1022, 1026).  Upon review of the record, the Court finds that the evidence cited by the ALJ constitutes substantial evidence to support her finding that Dr. Bhujang's opinion was inconsistent with the other providers' treatment notes.  (*See id.* at 39, 669-82, 683-732, 896, 913, 919, 933, 979, 983, 987, 991, 996, 1006, 1010, 1011, 1015, 1019, 1022, 1026).

Finally, as to the ALJ's remaining reason for finding the opinion not persuasive—*i.e.*, that the opinion is inconsistent with Plaintiff's ongoing job interviews, (*see id.* at 39)—the Court is likewise not persuaded by Plaintiff's argument, (*see* Doc. 22 at 36).  Specifically, the Court finds that the ALJ did not err in finding Plaintiff's ability to continue to interview for jobs inconsistent with the marked limitations opined by Dr. Bhujang, including that Plaintiff had "[n]o useful ability to function" in regard to accepting instructions and responding appropriately to criticism from supervisors and dealing with normal work stress.  (*See* Tr. at 971-72).  Nevertheless, even if the ALJ erred in relying on Plaintiff's ongoing job interviews to find the opinion not persuasive, the error was harmless given the other

proffered reasons for finding the opinion not persuasive.  *See Denomme*, 518 F. App'x at 877 (citing *Diorio*, 721 F.2d at 728).

Ultimately, the Court finds that the evidence cited by the ALJ constitutes substantial evidence to support her finding that Dr. Bhujang's opinion was unsupported by her own objective findings and inconsistent with the other evidence of record.  (*See id.* at 39, 669-82, 683-732, 876-81, 896, 913, 919, 933, 979, 983, 987, 991, 996, 1006, 1010, 1011, 1015, 1019, 1022, 1026).  Specifically, the Court finds that the ALJ considered the extreme limitations opined in by Dr. Bhujang's opinion and determined that such grave limitations were not consistent with the record as a whole.  (*See id.*).

To the extent Plaintiff asserts that certain of Dr. Bhujang's objective findings support her opinion, (*see* Doc. 22 at 35-36), the Court finds the argument not persuasive.  Indeed, the mere fact that other evidence of record supports a different conclusion does not require remand.  Rather, it is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them."  *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

In sum, the Court finds that the ALJ comprehensively analyzed the supportability and consistency of Dr. Bhujang's opinion when assessing its persuasiveness as required by 20 C.F.R. § 404.1520c.  Additionally, the Court finds that the ALJ's determination of the persuasiveness of Dr. Bhujang's opinion is supported by substantial evidence within the record.  Further, even considering Dr. Bhujang's status as a treating physician, the ALJ clearly articulated good cause for discrediting Dr. Bhujang's opinion when the ALJ showed that the opinion was inconsistent with the other evidence of record and unsupported by Dr. Bhujang's own mental status examinations or notes.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's decision is due to be affirmed.  Accordingly, the Court **ORDERS** that:

1.    The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on February 15, 2022.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties